IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

LISA PETERSON, et al.,           )
                                 )
        Plaintiffs,              )
                                 )
v.                               )        Civil Action No. 3:09-cv-628
                                 )
JAMES DEAN, et al.,              )        Judge Thomas A. Wiseman, Jr.
                                 )
        Defendants.              )

## MEMORANDUM OPINION

Before the Court are four essentially identical Motions to Dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure, filed respectively by Defendants Kyle Luke Lee, Carl Bailey, and Tommy Dykes, from Hawkins County (Doc. No. 73); Defendants Wayne Chester, Dan Powell, and Kitty Soder, from Weakley County (Doc. No. 78); Defendants James Dean, Walteen Parker, and Barbara Vanatta, from DeKalb County (Doc. No. 83); and Defendants Jean G. Cody, Joseph Terry Herrin, and Joan Ross, from Putnam County (Doc. No. 89) (collectively, the "moving Defendants"; where it is necessary to distinguish among them the subsets of moving defendants, they will be referred to by their county of residence).

All four of the motions seek dismissal of the claims against the moving Defendants on the grounds that the Plaintiffs' First Amended Complaint (1) fails to name an indispensable party; and (2) fails to state any claim upon which relief may be granted from these individual defendants, specifically on the grounds that Plaintiffs erroneously allege that they are county employees and that Defendants too are county employees acting under color of law. Defendants all argue that county administrators of elections are actually state employees, and that Defendants themselves are state officials rather than county employees. Thus, Defendants argue, "the facts plead[ed] by the plaintiffs as to the very identity of the [plaintiffs'] employer and the party who terminated the plaintiff[s] (i.e., the alleged actions of the defendants taken under color of law as county employees) are false as a matter of law." (Doc. Nos. 74, 79, and 84, at 11.) In a supplemental brief filed by the Putnam County Defendants, at the Court's request, Defendants further argue that because Defendants are state officials, the official capacity claims against them under § 1983 for monetary damages must be dismissed. Defendants also contend that (1)

they are entitled to qualified immunity shielding them from individual liability for monetary damages; (2) Plaintiffs' claims for prospective injunctive and declaratory relief are subject to dismissal because the "broad range of duties of an election administrator under Tennessee law involve numerous political considerations which render a patronage claim untenable as a matter of law." (Doc. No. 90, at 12.) In addition, the Hawkins and Weakley County Defendants argue that the claims against them should be dismissed for lack of venue and, alternatively, that the claims against them should be severed and transferred, respectively, to the Eastern and Western Districts of Tennessee. The DeKalb and Putnam County Defendants, because they reside within the Middle District of Tennessee, do not claim that venue as to them is inappropriate but they too assert that the claims against them have been improperly joined and should be severed pursuant to Fed. R. Civ. P. 21 and transferred to the Northeastern Division of the Middle District or, alternatively, separated for trial pursuant to Fed. R. Civ. P. 42(b). The Hawkins County Defendants seek dismissal of the claims against them on the alternative ground that the claims brought by Patricia Lumpkins are not yet ripe for review, since Plaintiff Lumpkins has not yet actually been fired from her position. Finally, Defendants assert that the facts as alleged in the Amended Complaint do not support a claim for recovery for any state-law violations; and the Amended Complaint fails to allege a plausible claim for conspiracy in violation of 42 U.S.C. § 1985(c).

Plaintiffs concede, as an initial matter, that the Amended Complaint does not state a claim based on any violations of state law. With respect to the remainder of the moving Defendants' arguments in support of their motions, the Court finds, for the reasons set forth herein, that (1) Defendants are state actors, which means that the § 1983 claims for monetary damages asserted against them in their official capacity must be dismissed; and (2) Defendants are entitled to qualified immunity as to the individual-capacity claims asserted against them under § 1983 for monetary damages. In all other respects, Defendants' motions will be denied. The Plaintiffs' claims against Defendants in their individual and official capacity for prospective injunctive and declaratory relief will therefore remain pending.

## I.      STANDARD OF REVIEW

The Supreme Court announced in *Bell Atlantic Corp. v. Twombly* that a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. 544, 555 (quoting Fed. R.

Civ. P. 8(a)(2);  *see also  Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1950 (2009);  Fed. R. Civ. P. 12(b)(6).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citation omitted); *see Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (recognizing that the *Twombly* decision "disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*," 355 U.S. 41, 45–46 (1957)).

In *Iqbal*, the Court made it clear that "*Twombly* expounded the pleading standard for 'all civil actions.'"  *Iqbal*, 129 S. Ct. 1953.  *Iqbal* also established that *Twombly* was based upon "[t]wo working principles."  *Id.* at 1949.  First, "[a]lthough for the purposes of a motion to dismiss[, courts] must take all of the factual allegations in the complaint as true, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Id.* at 1949–50 (citing *Twombly*, 550 U.S. at 555).  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 1950 (internal citations omitted).  Per *Twombly*, claims set forth in a complaint must be "plausible," rather than merely "conceivable."  *Twombly*, 550 U.S. at 570.  "[W]here well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Iqbal*, 129 S. Ct. at 1950 (citing Fed. R. Civ. P. 8(a)(2)).  However, the Court in *Twombly* disavowed any intent to impose a "heightened fact pleading of specifics," and emphasized that "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.*

## II.      FACTUAL AND PROCEDURAL BACKGROUND

All defendants in this case are alleged to have acted "under color of state law" and are named in their official capacity as members of the election commissions of DeKalb, Cannon, Weakley, Henry, Loudon, Putnam, Rhea, Union, Jefferson, Hawkins, and Dickson counties.  Each plaintiff is or was the administrator of elections for each of these counties, and alleges that his or her employment was

terminated or, in one case,[1] threatened to be terminated, by "certain Defendants representing" the specific county for which each plaintiff served as administrator of elections. (Am. Compl. ¶¶ 5–16.) Plaintiffs allege that the Defendants "all served under color of state law" as members of their respective county election commissions. (Am. Compl. ¶¶ 17–28.) Plaintiffs, all county administrators of elections, further allege they are county employees (Am. Compl. ¶ 32) and that administrators of elections are "ministerial officers who make no policy, enjoy limited discretionary authority, exercise no ultimate budgetary authority, and are expected to perform all of the duties of the office with political impartiality." (Am. Compl. ¶ 33.)

Defendants, who are also alleged to be "county employees" (Am. Compl. ¶ 37), represent the Republican Party, the current majority party in the Tennessee General Assembly, as members of their respective county election commissions, pursuant to Tenn. Code Ann. § 2-12-103. (Am. Compl. ¶ 36.) Pursuant to Tennessee statute, the *state* election commission is comprised of five members, Tenn. Code Ann. § 2-11-101, three of whom must be members of the majority political party and while the remaining two must be members of the minority political party. Tenn. Code Ann. § 2-11-103. The state election commission has the responsibility to appoint five election commissioners for each county, for two-year terms. Tenn. Code Ann. § 2-12-101. Once again, pursuant to statute, three members of each county election commission must be members of the majority political party, and two must be members of the minority political party. Tenn. Code Ann. § 2-12-103. Among other responsibilities, each county election commission must appoint, by majority vote, an administrator of elections "who shall be the chief administrative officer of the commission and who shall be responsible for the daily operations of the office and the execution of all elections." Tenn. Code Ann. § 2-12-201(a). There is no express political litmus test for election administrators; rather, "[i]n evaluating a prospective appointee, the commission shall consider the knowledge and experience of such prospective employee in the following areas: administrative, managerial, instructional, communication, budgetarial, purchasing, promotional, legal and general office skills and other related skills necessary to fulfill the statutory requirements of administrator." Tenn. Code Ann. § 2-12-116(a)(1).

---

[1] The claims asserted by another plaintiff, the administrator of elections for Rutherford County, who had allegedly been threatened with termination but not actually terminated have been settled, and the claims against the election commissioners from Rutherford County have been dismissed.

In 2008, the majority and minority parties of the Tennessee General Assembly changed with the Republican Party's taking control of each house. This change in turn ushered in changes in the composition of both the state and county election commissions. Plaintiffs do not challenge those changes. Plaintiffs charge, however, that "prior to each Defendant's appointment as a county election commissioner, Defendants met with members and officials of the state and county Republican Party and certain elected Republican members of the state legislature and committed, as a condition of their appointment, to terminate Plaintiffs' employment and appoint a member or supporter of the Republican Party to replace Plaintiffs." (Am. Compl. ¶ 40.) Plaintiffs also allege that prior to public meetings of each county election commission, Defendants in each county met in private and communicated, deliberated, and agreed to vote to terminate Plaintiffs' employment. (Am. Compl. ¶ 44.) Plaintiffs aver that Defendants thereby entered into conspiracies to terminate Plaintiffs solely because of their actual or perceived political party affiliation, in exchange for the appointment to their respective county's election commission. (Am. Compl. ¶¶ 41, 45.) Plaintiffs allege specifically that each of them was told either directly or indirectly that they would be terminated because of their political party affiliation and replaced with persons who were members of or supported the Republican Party. All but one of the remaining plaintiffs in this case have already been terminated, or resigned or retired in anticipation of being terminated. The remaining plaintiff has allegedly been threatened with termination, solely on the basis of her perceived or actual political affiliation.

Based upon these factual allegations, Plaintiffs assert causes of action under 42 U.S.C. § 1983 for violation of their First and Fourteenth Amendment rights and under 42 U.S.C. § 1985(3) for conspiracy to interfere with their civil rights.[2]

This Court previously granted Plaintiffs' motion to certify two questions to the Tennessee Supreme Court, specifically: (1) whether the position of administrator of elections is an "office or public trust" under the Tennessee Constitution, with respect to which no political or religious test can be

---

[2] The First Amended Complaint also alleges violations of the Tennessee Constitution but does not seek recovery of damages for said violations. The Court denied Plaintiffs' motion to file a Second Amended Complaint in order to seek injunctive relief for the alleged state constitutional violations, so there is no state-law claim for relief currently pending before this Court.

imposed as a qualification for the position; and (2) whether an administrator of elections is a county employee or a state employee. Plaintiffs did not seek to answer the question of whether the Defendants, as county election commissioners, are state or county employees. In any event, in January 2010, the Tennessee Supreme Court declined to accept review of the certified questions, finding that the answers "require[d] additional facts that are not available to the Court." (*See* Doc. No. 62.)

## III.     ANALYSIS AND DISCUSSION

### A.     The Dispute over Whether Plaintiffs and Defendants Are County or State Officials

In their original memorandum in support of their motion, the Hawkins, Weakley and DeKalb County Defendants devote five pages to arguing at length, based on *Ellis v. Bradley County*, No. 1:06CV260, 2007 WL 1830756 (E.D. Tenn. June 22, 2007), that Plaintiffs, as administrators of elections, are state employees rather than county employees. They devote a single paragraph to argue, conclusorily, that Defendants, all county election commissioners, are also state officials rather than county employees. Based on their contention that Plaintiffs and Defendants are all state officials, Defendants insist that "the allegations of the . . . Amended Complaint fail, as a matter of law, to state a claim against [the moving] Defendants upon which relief may be granted under any theory of law which has been asserted. (Doc. No. 74, at 4–5.)

In the case upon which Defendants rely, *Ellis v. Bradley County*, No. 1:06-CV-260, 2007 WL 1830756 (E.D. Tenn. June 22, 2007), *aff'd*, No. 07-5929, 2008 WL 8013030 (6th Cir. Jun 06, 2008), *cert. denied*, 129 S. Ct. 1617 (2009), the question of whether the plaintiff administrator of elections was a county or state employee was actually dispositive, because the plaintiff had sued the county alleging employment discrimination and retaliatory firing. The county, obviously, could be found liable on those charges only if the county was in fact the plaintiff's employer. The court determined that the plaintiff was instead employed by the state, and on that basis dismissed the claims against the county. The same issue—whether *Plaintiffs* are county or state employees—does not appear to be dispositive in the case at bar, so the Court requested additional briefing from the Defendants to further explain why it mattered to their case if Plaintiffs—or Defendants—are state actors rather than county employees. The parties have complied and it is now apparent that the question of Defendants' status has significant repercussions for the continued viability of this suit.

In their supplemental briefs, Defendants argue that the county election commissioners are state actors as a matter of state law and that, consequently, the official-capacity claims under § 1983 for damages against *all* Defendants, not just the moving Defendants, must be dismissed for failure to state a claim. Defendants further argue that any amendment to assert that Defendants are state actors rather than county employees would be barred by the statute of limitations. In addition, Defendants contend that Plaintiffs themselves are state employees and that the non-damages remedies sought by Plaintiffs, including back pay and reinstatement, can only be effectively ordered against the Plaintiffs' actual employer—the State—which has not been named as a party. In fact, Plaintiffs have not sued either the State or the respective counties in which they operate or operated as administrators of elections. Rather, they sue the individual members of the county election commissions in both their individual capacity and in their official capacity as members of the various election commissions. Although they do allege that Plaintiffs and Defendants are county employees, they also allege that Defendants were all acting under color of state law.

### (1) *Defendants Are State Actors.*

As the Sixth Circuit recently recognized in *Ellis v. Bradley County*, the Tennessee Supreme Court concluded long ago that county election commissioners are state actors. *Abercrombie v. City of Chattanooga*, 313 S.W.2d 256, 259 (Tenn. 1958). Plaintiffs nonetheless argue that *Abercrombie* was effectively overturned by the Tennessee General Assembly with the passage, in 1986 and 2006 respectively, of Tenn. Code Ann. §§ 2-12-210 and 8-17-102 which statutes, Plaintiffs claim, conclusively establish that county election commissioners and administrators are county employees or officials.

This Court is not persuaded that the referenced provisions must be read thus. Section 2-12-210 indeed states:

> Nothing in Acts 1986, ch. 930 shall be construed as conferring upon any county election commission, administrator of elections or any other county election official, status as a state employee. All such persons shall be subject to all applicable purchasing and budgetary laws of such county.

Tenn. Code Ann. § 2-12-210 (1986). This provision, however, does not establish that county election commissioners are county employees. Rather, it provides that a specific legislative act shall not be construed as conferring upon county election commissions or administrators of elections status as state employees. Moreover, as Defendants point out, they do not purport to be state *employees* for purposes

of receiving state retirement or other benefits or for any other reason. Rather, they contend that they are appointed state *officials* under state law.

Section 8-17-102(a)(2) likewise does not establish that election commissioners are county employees. That provision states in relevant part: "[F]or the purpose of this chapter, the county election commission shall be considered an instrumentality of county government; and the administrator of elections and other employees of the election commission shall be considered county employees." As Defendants point out, they are *members* of the county election commission—they are not employed by it—so this provision does not actually address their status. Even if it did, the provision, by its terms, is limited in application to the Chapter within which the provision is located, "Ethical Standards for Officials and Employees." As such it does not appear to have general applicability.

In their respective consideration of the identical question in *Ellis*, both the Eastern District of Tennessee and the Sixth Circuit were similarly unpersuaded. As the Sixth Circuit noted: "Read in context, the statutes to which [Plaintiffs] refer[] in support of [their] argument . . . do not apply." *Ellis*, 2008 WL 8013030, at *1. In his opinion, Judge Collier in the Eastern District of Tennessee observed that "the authorities are split," with the two referenced statutes weighing on "the county employee side of the debate," 2007 WL 1830756, at *4 n.2, but nonetheless found after examining in depth "the Tennessee Code, relevant case law, and the persuasive Attorney General opinions," *id.* at *5, and "evaluat[ing] the functions of the Administrator's position, the budgetary burden, the legislative intent, and the jurisdictional limitations," *id.* at *3, that county administrators of elections are state rather than county officials. In particular, Judge Collier appeared to find it dispositive that the defendant county "had little control over Plaintiff's selection. If everyone above Plaintiff, responsible for his hiring and firing, was a State official and appointed by the State, it would be unfair to hold [the county] liable for actions taken without its input, direction or sway." *Id.* at *6.

This Court concurs and, while *Ellis* did not delve directly into the question of whether county election commissioners are state or county officials, the reasoning employed by both the district court and the Sixth Circuit regarding the employment status of county election administrators is equally applicable here. County election commissioners are appointed by the state election commission without input from the counties. The counties have no authority to hire or fire them and, although the commissioners are

paid by the counties, the amount of their compensation is set by statute and may not be reduced by the counties. Tenn. Code Ann. § 2-12-108. The commissioners' duties are established by statute and are likewise outside the purview of the counties. Tenn. Code Ann. § 2-12-116. The Court holds based on *Abercrombie* and *Ellis*, as well as the other relevant authority cited therein, that county election commissioners are state officials rather than county officials.

That conclusion leads ineluctably to the narrowing of Plaintiffs' claims in this action. First, the law is clear that a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). As such, it is no different from a suit against the State itself. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). Further, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will*, 491 U.S. at 71. "Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Id.* at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. at 167, n.14; and citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)). Consequently, under *Will*, the official-capacity claims under § 1983 for damages against *all* Defendants, not just the moving Defendants, must be dismissed for failure to state a claim, though the claims for reinstatement and other prospective injunctive relief may stand.

### (2) The Remedies Sought Can Be Ordered Against Defendants in their Official Capacity.

Defendants insist that the non-damages relief sought, including reinstatement, is the type of remedy only the *employer* can provide, not the Defendants in their individual or representative capacity. The Court is not convinced that the remedies sought would *not* be available against Defendants in their official capacities, and further concludes that this issue is more appropriately addressed in the context of a motion for summary judgment than a motion to dismiss.

### (3) An Amendment to Allege Defendants Are State Actors Would Not Be Barred by the Statute of Limitations.

The Hawkins, Weakley and DeKalb County Defendants note that they have been served and entered appearances in this action *only* in their individual capacities. On that basis, they assert that, even if Plaintiffs requested at this juncture to amend their complaint to allege that Defendants are state

employees or representatives, such an amendment would be futile as barred by the one-year statute of limitations applicable under Tennessee law to § 1983 claims, as there would be no "relation back" under Rule 15(c) of the Federal Rules of Civil Procedure.

Plaintiffs have not responded to this argument, but the Court is not persuaded. Under Rule 15(c)(1)(C), an amendment that "changes the party or the naming of the party against whom a claim is asserted" relates back to the date of the original pleading if the party to be brought in by amendment "received such notice of the action that it will not be prejudiced in defending on the merits" and "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." In the present case, it is not clear that Rule 15(c) is implicated at all. The complaint and amended complaint both name Defendants "acting under color of state law and in their official capacity as members of the [applicable] County Election Commission, and individually." The contemplated amendment would not change the naming of the Defendants, as they were clearly named in their official capacity "as members of" their respective county election commissions from the inception of this suit. Rather, the contemplated amendment would simply correct the allegation that Defendants are county employees and instead assert that they are state officials.

Counsel for the Hawkins, Weakley and DeKalb County Defendants entered an appearance on behalf of these Defendants "in their individual capacities" only (*see, e.g.*, Doc. No. 32), but these Defendants cannot deny that they have known all along that they were sued in their official capacity as well. Moreover, Defendants and the State clearly had reason to know that Defendants are state officials and that the interests of the State were potentially implicated by this suit, regardless of the Plaintiffs' error in that regard. As a result, the State has been on notice of the claims against the Defendants in their official capacities from the inception of this suit, and would not be prejudiced by being required to participate in the defense on the merits. *Cf. Moore v. City of Harriman*, 272 F.3d 769, 775 (6th Cir. 2001) (permitting amendment to specify that police-officer defendants were sued under § 1983 in their individual capacities, finding Rule 15(c) applied).

The motion to dismiss the official-capacity claims on the basis of the statute of limitations will therefore be denied.

**B.      Whether Plaintiffs' Patronage Claim Is Untenable as a Matter of Law**

The Putnam County Defendants argue specifically that the Plaintiffs' allegations that the position of administrator of elections is "merely ministerial" and a position that has "no political involvement" is "not to be taken as true on a motion to dismiss since as a matter of law the administrator has enumerated *statutory* duties that clearly involve both policy and discretionary functions." (Doc. No. 90, at 11.) In short, Defendants argue that because the duties of the administrators of elections are prescribed by statute, it is a purely legal question as to whether those duties have "political relevance" and involve "political considerations which render a patronage claim untenable as a matter of law." (Doc. No. 90, at 11, 12.) Whether Plaintiffs may bring a patronage claim is, of course, the very nub of the controversy posed by this case, and resolution of that question will be dispositive of Plaintiffs' claims.

The Court declines to reach this question at this juncture, however, as it has not been fully briefed and is likely better addressed in the context of a motion for summary judgment. Nonetheless, a cursory inspection of the statute suggests that the functions of administrators of elections fall toward the ministerial end of the spectrum. The Tennessee Attorney General suggested as much in a recently issued formal opinion concluding that courts could find, based on the statutory definition of their duties, that county officials are purely ministerial officials such that their dismissal solely on the basis of political party affiliation constitutes a violation of that individual's First and Fourteenth Amendment rights under the United States Constitution. The Attorney General further indicated, however, that resolution of the question might vary from one county to the next depending on whether any of the county election commissions could demonstrate as a factual matter "that it has delegated broad discretionary policymaking authority regarding budgetary matters and/or the implementation of its goals and programs to the administrator of elections." Tenn. Atty. Gen. Op. No. 09-52, 2009 WL 983587 (April 8, 2009). In the event of such a showing, a court "could find that political affiliation is an appropriate requirement for the effective performance of that particular administrator's position."

Admittedly, a Tennessee Attorney General's opinion is not binding on Tennessee state courts or this Court. *See Wash. Cnty. Bd. of Educ. v. MarketAm., Inc.*, 693 S.W.2d 344, 348 (Tenn. 1985) ("Although opinions of the Attorney General are useful in advising parties as to a recommended course of action and to avoid litigation, they are not binding authority for legal conclusions, and courts are not required or obliged to follow them."); *see also Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323,

338 (6th Cir. 2007) (rejecting the State's contention that an Attorney General's opinion should have been given "a greater degree of deference by the district court as a persuasive authority for interpreting Michigan law," and noting that an "Attorney General's Opinion has no precedential value, and can be revised any time by this or successive Attorneys General") (citing *Stenberg v. Carhart*, 530 U.S. 914, 940, 942 (2000)).  This Court, however, finds the opinion concerning administrators of elections to be well considered and generally persuasive.  While the Court reserves the prerogative to draw a conclusion contrary to that of the Attorney General after analyzing the issue in depth, at this stage in the proceedings, the Court simply holds that the Defendants have not demonstrated that they are entitled to judgment as a matter of law on the patronage issue.

> **C.     Whether Defendants Are Entitled to Qualified Immunity on the § 1983 Claim**

Defendants argue that, because they are state actors, the Court must apply a "heightened level of scrutiny" to their motion to dismiss on the basis that, with respect to the claims asserted against them in their individual capacities, and that under such a heightened level of scrutiny the Court should conclude that they are entitled to qualified immunity.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *cf. Figueroa-Rodriguez v. Aquino*, 863 F.2d 1037, 1040 (1st Cir. 1988) (in similar patronage-dismissal context, holding that the defendant was entitled to summary judgment on qualified immunity as to plaintiff's damages claims, noting that the court's "task in disposing of the qualified immunity question is to ascertain 'what a reasonable person would have known as to the state of the law' at the time of the alleged unlawful acts, 'not what the actual answer is' in the particular case" (quoting *Rodriguez-Burgos v. Elec. Energy Auth.*, 853 F.2d 31, 34 (1st Cir. 1988))).

Defendants argue that, even assuming that Plaintiffs' First and Fourteenth Amendment Rights were violated, the law at the time of Plaintiffs' dismissals was unclear regarding whether the position of Administrator of Elections was one to which political affiliation lacked a valid relation.  In fact, the only thing clear now is that the law on that issue remains unclear.  There is case law from at least one other state with a similar statutory scheme indicating that Plaintiffs' positions may not be political, ***see (4th Cir.***

*OP*), but that opinion certainly is not binding here. The Attorney General's opinion on this topic, issued in April 2009, was available around the time the actions giving rise to this lawsuit occurred, but that opinion simply indicated that the issue posed factual questions to be determined on a case-by-case basis.

Plaintiffs have not responded to this argument, nor pointed to any case law that would suggest that Defendants knew or should have known that their actions would violate Plaintiffs' clearly established constitutional rights. On the present record, the Court finds that the question of whether Plaintiffs' position as Administrator of Elections was protected under the law from patronage dismissals was not clearly established at the time Defendants terminated or threatened to terminate Plaintiffs' employment. Consequently, the claims for monetary damages asserted against Defendants in their individual capacities are subject to dismissal on qualified-immunity grounds. The motions to dismiss will be granted in that respect.

### D.　　Whether the Amended Complaint Fails to State a Claim under 42 U.S.C. § 1985(3)

Under 42 U.S.C. § 1985(3),

> If two or more persons in any State . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws [and] . . . do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action . . . against any one or more of the conspirators.

The Sixth Circuit has held that, to state a claim under § 1985(3), a plaintiff must prove (1) the existence of "a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person . . . or deprivation of any right or privilege of a citizen of the United States." *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994) (citation omitted). In addition, a plaintiff must establish that the conspiracy was motivated by a class-based animus, such as race, *id.*, or political affiliation. *See Glasson v. City of Louisville*, 518 F.2d 899, 912 (6th Cir. 1975), *cert. denied* 423 U.S. 930 (1975) (concluding that the § 1985(3) extended protection to that class of persons who are critical of government officials and their policies); *Cameron v. Brock*, 473 F.2d 608, 610 (6th Cir. 1973), (holding that the protection of § 1985(3) "reaches clearly defined classes, such as supporters of a political candidate").

In the present case, the moving Defendants assert that the Amended Complaint fails to state a valid claim under § 1985(3), on the bases that (1) the Plaintiffs have not alleged they belong to a distinct class entitled to protection under § 1985(3), and (2) the facts supporting the existence of a conspiracy are not alleged with sufficient specificity.

With respect to the first argument, the Amended Complaint alleges that Defendants are all members of the Republican Party and that Plaintiffs were terminated or (threatened with termination) "solely because of their actual or perceived political party affiliation." (Am. Compl. ¶ 41.) The Court construes the allegations in the Amended Complaint as asserting that Plaintiffs were targeted, not merely because they were or might have been members of the Democratic Party, but more specifically because they were *not* members of the Republican Party, now the majority party governing the State of Tennessee. In *Glasson v. City of Louisville*, the Sixth Circuit reversed the district court's judgment in favor of the defendant City where the plaintiff was a young woman carrying a sign construed as critical of then-President Nixon at a time when the President's motorcade was to travel through Louisville. The Sixth Circuit stated:

> A more invidious classification than that between persons who support government officials and their policies and those who are critical of them is difficult to imagine. Appellees drew a line that was not merely invidious but one that also struck at the very heart of the protection afforded all persons by the First and Fourteenth Amendments.

518 F.2d at 912 (citation omitted). Although Plaintiffs here are not alleged to have expressed allegiance or opposition to any particular political position or party, the Court finds that the classification "not Republican" is the type of invidious classification prohibited by § 1985(3), and that Plaintiffs have adequately alleged that element of their claim.

Further, with respect to whether Plaintiffs have alleged a conspiracy with sufficient specificity, Defendants rely upon an unpublished district court opinion for the proposition that

> [t]he specificity necessary for a § 1985 claim requires a plaintiff to allege (1) specific conduct that violated his rights; (2) the time and place of that conduct; (3) and the identity of the responsible parties. Furthermore, a plaintiff fails to state a claim under § 1985 if he fails to make sufficient factual allegations to link two alleged conspirators in the conspiracy and to establish, at least by inference, the requisite "meeting of the minds" essential to the existence of a conspiracy.

*Anderson v. Ohio St. Univ.*, No. C-2-00-123, 2001 WL 99858, at *9 (S.D. Ohio Jan. 22, 2001) (citations omitted), *aff'd on unrelated grounds*, 26 F. App'x 412 (6th Cir. 2001). To this Court's knowledge, the

Sixth Circuit has not adopted a requirement that a conspiracy be pleaded with that degree of specificity, even where qualified immunity is asserted.

Nor are the allegations in this case as obviously deficient as those set forth in *Twombly*, in which the Supreme Court concluded that "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice [to state a claim under the Sherman Act for conspiracy]. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." 550 U.S. at 556–57. The Court also noted, however, that

> stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.

*Id.* at 556 (footnote omitted).

In the present case, the Amended Complaint alleges enough factual matter to "raise a reasonable expectation that discovery will reveal evidence of an illegal agreement." *Id.* Specifically, Plaintiffs allege that they occupy positions for which no political test is required as a qualification; that Defendants met with members and officials of the state and county Republican Party and certain elected members of the state legislature; that Defendants agreed, as a condition of their appointment to their respective county election commissions, to terminate Plaintiffs' employment and appoint in their place a member or support of the Republican Party. (Am. Compl. ¶¶ 39, 40.) Plaintiffs also allege that the Defendants within each specific county election commission at issue met and agreed among themselves, in furtherance of the alleged conspiracy, to vote to terminate the employment of the individual plaintiff functioning as Administrator of Elections within their county. (Am. Compl. ¶¶ 44, 45.) Finally, Plaintiffs allege that Defendants took actions in furtherance of the conspiracy when they in fact terminated (or, in one case, threatened to terminate) Plaintiffs' employment.

The Court therefore finds that the Amended Complaint adequately states a claim for a conspiracy under 42 U.S.C. § 1985(3) for purposes of Rule 12(b)(6) and in compliance with the guidelines articulated by the Supreme Court for assessing the sufficiency of the factual allegations supporting a claim. Defendants' motion to dismiss Plaintiffs' § 1985(3) claim for failure to state a claim will be denied.

The Court further notes, however, that the presence of a conspiracy claim likely will have little

impact on the outcome of this case. As set forth above, it appears that essentially the only relief available is prospective injunctive relief against the Defendants in their official capacities. If Plaintiffs prevail on their § 1983 claim, they will have no need to pursue the § 1985 claim. If Plaintiffs have sufficient evidence to prevail on their § 1985 claim, they almost necessarily will prevail on their § 1983 claim.

### E.     Whether the Complaint Fails to Name an Indispensable Party

Rule 12(b)(7) of the Federal Rules of Civil Procedure provides for dismissal of an action, upon motion, for "failure to join a party under Rule 19." Rule 19, pertaining to required joinder of parties, provides in pertinent part as follows:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A)  in that person's absence, the court cannot accord complete relief among the parties; or
>
> (B)  That person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest. . . .

Fed. R. Civ. P. 19(a). Further, if a person whose joinder is required under Rule 19(a) but whose joinder is not feasible, the Court must determine, in its discretion, whether the matter "should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b).

Defendants in the present action assert that the state election commission, as a body, is an indispensable party since "the claims against the present defendants cannot secure the relief requested by the plaintiffs," that is, injunctive relief and/or reinstatement, because the individual Defendants may or may not still be serving on their respective county election commissions by the time this matter proceeds to trial. (Doc. No. 74, at 17.) Defendants further assert that the county election commissions are not separate legal entities but are simply "arms" of the state election commission. Defendants further argue that the state election commission and the individual state commissioners are "necessary parties" because they appear to be unnamed co-conspirators in this case. (Doc. No. 74, at 19 (citing *McNeill v. Travelers Ins. Co.*, 2008 U.S. Dist. LEXIS 102108 (W.D. Tenn. Dec. 16, 2008) (finding co-conspirators were indispensable parties within the meaning of Rule 19 whose joinder was not feasible and therefore dismissing state-law conspiracy claims).) Defendants argue that because the state election commissioners are necessary parties who were not named, this action should be dismissed in its entirety.

Alternatively, Defendants argue that the conspiracy claims and claims for injunctive relief, at a minimum, should be dismissed. Defendants do not address the question of whether the state election commissioners could be joined.

In any event, the Court finds that the state election commission and state commissioners are not indispensable parties. Plaintiffs seek reinstatement and other prospective injunctive relief. The county election commissioners, a majority of whom from each respective county have been named, together have the power to effect that relief. To the extent any are rotated out prior to resolution of this lawsuit, because they are named in their official capacity, their successors could be substituted in their stead. With respect to the conspiracy claims, Plaintiffs do not seek relief from the alleged co-conspirators, and the Court finds that Plaintiffs are not, under the circumstances, required to name as defendants all alleged co-conspirators. The motion to dismiss is without merit insofar as it seeks dismissal for failure to join indispensable parties.

### F. Whether the Claims Must Be Dismissed for Lack of Venue, or Severed and Transferred for Inappropriate Joinder

The Weakley County and Hawkins County Defendants insist that venue is proper in the Middle District of Tennessee only if there are allegations that warrant joinder of the claims specifically against them with the claims that are properly filed in the Middle District. The moving Defendants assert that in the absence of a valid claim for conspiracy amongst the named defendants, Plaintiffs have failed to plead any facts that relate the actions of the Weakley County or Hawkins County Defendants to the actions of any other defendants in this suit. The joinder of these actions, they assert, is unduly prejudicial and improper. On that basis, they assert that the claims against them should be dismissed for lack of venue in this Court. In the alternative, they move the Court to sever the claims against them from the other claims, and transfer the severed action against the Weakley County Defendants to the Western District of Tennessee, and the severed action against the Hawkins County Defendants to the Eastern District. Finally, the moving Defendants ask, in the event the Court finds the conspiracy allegations in the Amended Complaint support permissive joinder of the claims in this action, that the Court separate the matters for trial to further the convenience of the parties and avoid the risk of unfair prejudice or confusion to the jury, under Rule 42(b).

#### (1) Venue

The federal venue statute provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The decision whether to grant a change of venue pursuant to § 1404(a) is left to the district courts' sound discretion. *Hoffa v. Gray*, 323 F.2d 178, 179 (6th Cir. 1963). The burden of proving a need for transfer is the party bringing the motion. *Blane v. Am. Inventors Corp.*, 934 F. Supp. 903, 907 (M.D. Tenn. 1996) (citing *Factors Etc. v. Pro Arts, Inc.*, 579 F.2d 215 (2d Cir. 1978)). The burden of showing a need for transfer is considerable: "Unless the balance is *strongly in favor of the defendant*, the plaintiff's choice of forum should rarely be disturbed." *Id.* (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)) (emphasis added).

This action was brought by former and current administrators of elections from all three grand divisions of the State of Tennessee who have been terminated or threatened with impending termination for political reasons. Defendants do not dispute that venue is proper in the Middle District, nor do they contest jurisdiction. Moreover, even assuming that the claims "might have been brought" in the Eastern District of Tennessee, the moving Defendants they have not satisfied their burden of showing that the balance of relevant factors weighs strongly in favor of transfer. It is, in fact, apparent to the Court that transfer would, as Plaintiffs argue, lead to the very "waste and inefficiency which the Rules of Civil Procedure seek to avoid." (Doc. No. 121, at 2.)

### *(2)   Joinder and Severance*

Permissive joinder of defendants is proper when the alleged claim "arises out of the same transaction, occurrence, or series of transactions or occurrences," *and* "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). The Sixth Circuit has held the terms "transaction or occurrence" in Rule 20(a) are to be "given a broad and liberal interpretation in order to avoid a multiplicity of suits." *Lasa Per L'Industria Del Marmo Societa Per Azioni v. Alexander*, 414 F.2d 143, 147 (6th Cir. 1969) (citation omitted).

Moreover, the purpose of Rule 20(a) is to promote judicial economy and trial convenience. *Bridgeport Music, Inc. v. 11C Music*, 202 F.R.D. 229, 230 (M.D. Tenn. 2001) (citing *Mosely v. Gen. Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974)). The rule is governed by the general principle of allowing "the broadest possible scope of action consistent with fairness to the parties." *United Mine*

*Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) (joinder of claims, parties and remedies is strongly encouraged). *See also Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000) ("The purpose of Rule 20(a) in permitting joinder in a single suit of persons who have separate claims, albeit growing out of a single incident, transaction or series of events, is to enable economies in litigation. . . .").

Rule 20 further authorizes courts to issue any order—"including an order for separate trials"—that may be necessary to protect parties from "embarrassment, delay, expense, or other prejudice that arises from including a person against whom the party asserts no claim and who asserts no claim against the party." Similarly, Rule 21 grants the courts broad discretion to "sever any claim against a party," and order that that claim proceed separately.[3]

At this point in the proceedings, the Court finds that the requirements of Rule 20(a)(2) are met: It is clear from the Amended Complaint (which is at present the only basis for the Court's determination) that Plaintiffs' claims arise out of the same alleged transaction or occurrence—the alleged conspiracy—and that common questions of law will arise in this action. Defendants do not claim that joinder was actually inappropriate under Rule 20(a)(2). With respect to the prejudice to which Defendants claim they may be subject as a result of joinder, such prejudice is purely speculative at this stage, and Defendants have not demonstrated that any potential prejudice could not be readily limited by a court order under Rule 20(b) directed toward minimizing prejudice.

In sum, while the Court has broad discretion to sever claims, Defendants have not shown that they were "misjoined" nor have they demonstrated that they will likely suffer prejudice if the claims against them are not severed. On that basis, and because it further appears at this stage in the proceedings that the interests of justice and judicial efficiency will best be served by allowing the claims to proceed against all defendants concurrently, the alternative motion to sever will therefore be denied.

The motion for separate trials under Rule 42(b) is premature. That motion will be denied without

---

' [3] Rule 21 states: "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." The last sentence of the rule formerly read: "Any claim against a party may be severed and proceeded with separately." According to the Advisory Committee Note regarding this amendment, "The language of Rule 21 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. *These changes are intended to be stylistic only.*" Rule 21, Fed. R. Civ. P., Advisory Comm. Notes, 2007 Amendment (emphasis added).

prejudice.

G.    **Whether the Claims against the Hawkins County Defendants Must Be Dismissed as Unripe**

The Hawkins County Defendants assert that the claims against them by Plaintiff Patricia Lumpkins are not ripe because Lumpkins has not actually been fired—she has only been threatened with termination.

Under Article III of the Constitution, the courts' powers extend only to legal questions presented in actual "Cases" and "Controversies."  A claim is not "'amenable to . . . the judicial process' when it is filed too early (making it unripe), when it is filed too late (making it moot) or when the claimant lacks a sufficiently concrete and redressable interest in the dispute (depriving the plaintiff of standing)."  *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998)).  The ripeness doctrine generally is designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract" debates.  *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807 (2003).  The Sixth Circuit has indicated that the courts should consider "two basic questions" in determining whether a controversy is "ripe" for consideration:  "(1) is the claim 'fit[ ] . . . for judicial decision' in the sense that it arises in a concrete factual context and concerns a dispute that is likely to come to pass?  and (2) what is 'the hardship to the parties of withholding court consideration'?"  *Id.* (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)).  A claim generally is not "fit" for review if it depends on "contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks omitted).

Defendants argue that Lumpkins' claims rest upon such contingent future events that may not occur as anticipated, or at all, and that "[t]he mere possibility that a plaintiff's civil rights might be violated at some future time does not give rise to a present cause of action."  (Doc. No. 74, at 14 (citation omitted).)  Plaintiffs respond by pointing out that Lumpkin's request for relief in this case is limited to injunctive relief to protect her employment due to the unconstitutional acts of Defendants which, Plaintiffs allege, have already occurred.  Moreover, contrary to Defendants' assertions, Lumpkins alleges that she has been told she will be terminated because of the fact that she is not a member of the Republican Party, and that her termination is "imminent."  Her claim does not depend on a "contingent" future event.

In short, her claim of injury "arises in a concrete factual context and concerns a dispute that is likely to come to pass." *Warshak*, 532 F.3d at 525. Withholding of consideration would effectively serve to postpone the inevitable and would place Lumpkins in the position of paying a second filing fee and risking a delayed resolution of her claims. The Court finds that Lumpkins' claims are ripe. The motion to dismiss them as unripe will therefore be denied.

## IV.    CONCLUSION

For the reasons set forth herein, Defendants' motion will be denied in part and granted in part. Specifically, the Court finds that the claims for monetary damages asserted against the Defendants in their official capacity are subject to dismissal because Defendants, in their official capacity as state actors, are not subject to liability for monetary damages under § 1983. Second, the claims against Defendants in their individual capacity for monetary damages are subject to dismissal because Defendants in their individual capacity are shielded by qualified immunity from liability for monetary damages: Even assuming the allegations in the complaint to be true, Defendants' conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known, in light of the fact that the question of whether county administrators of elections are protected from patronage dismissal remains an unsettled question of law.[4] The motion to dismiss the claims for monetary damages against Defendants in both their representative and individual capacities will therefore be granted. The motion for separate trials under Rule 42(b) will be denied without prejudice. In all other respects, Defendants' motions will be denied.

An appropriate Order will enter.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge

---

[4] The Court observes that, by virtue of this lawsuit, county election commissions have been put on notice that firing county election administrators because of their political affiliation or lack thereof might well violate the administrators' First and Fourteenth Amendment rights.